Good morning, Your Honor. May it please the Court, my name is Christina Flores, and I'm here on behalf of the petitioner, Ms. Lina Liu. I would like to reserve two minutes for rebuttal. Essentially, this is a claim for asylum and withholding of removal. The respondent is a native of the People's Republic of China. She was essentially found credible by the immigration judge, and this finding was upheld by the board. The issue before this Court is essentially whether Ms. Liu has met the burden of demonstrating that she is a refugee, whether she has suffered past persecution or whether she has a well-founded fear of future persecution. And her claim essentially stems from harm that she suffered in 2005 when she participated in two separate demonstrations concerning the government's exercise of its eminent domain powers. She is a divorced woman that lived with her elderly parents, and her father owned the apartment, city apartment that they lived in. They were essentially told to, that they had to vacate within 30 days, and that sometime in the future, give or take a year, they would be given replacement property for this. So, so far there's no nexus in the story? Then what happened? That would create a nexus to? They decided to try to negotiate a delay of their eviction and more favorable terms. Right. But I think at the end of the day, just to jump ahead, you have to have persecution on account of, and show a nexus to one of the protected grounds. And eviction itself, as the BIA pointed out, is not that. So tell me, in your view, when did the situation evolve into one where we had one can impute or a political opinion? Well, I believe that we have to look at the different facets of the harm that she sustained. And I believe none of them, in isolation, would meet the burden of past persecution. However, in conjunction, collectively, under the totality of the circumstances, the fact that she was arrested twice, she was beaten, she was? I'm not talking about the persecution prong here, but I'm talking about the on account of prong. Yes. I believe the fact that she was fired from her 20-year employment, government employment. She was also told, as one of the terms of her release, that she was not to participate in any political activities. Now, why would they have? Maybe I'm missing something, but I thought your best point was that she organized a protest of people who were in a similar situation, whose property had, in effect, been condemned without adequate compensation. Am I missing something? No, I thought that was already something that it had. So isn't that the nexus that we're looking for, if there is one? That is, yes. That's a political act. She got people together. It happened twice. And in both instances, there's a claim that she was severely beaten or mishandled in jail, told they could play with her or whatever. The nexus, though, if there is one, is based upon her political protest in which she led other people to protest the, what we would call, condemnation without just compensation of their property. Isn't that your primary argument? Yes, that is. Well, those are the protests that she organized in front of the government agency that was in charge of the condemnation? That's correct. It was at the same location. And essentially, the immigration judge characterized it as just a personal claim that she had. However, in the case of Who versus Holder, which opposing counsel has brought up, was decided after this case was briefed. Also, there was a claim by an employee for his wages, and the court deemed that it was not just a personal claim, that, in fact, it was a claim of a political nature just because of the fact that the government was involved. The government was the employer there. Here, the government is exercising its rights under the eminent domain powers. So it has been common. Excuse me for interrupting. I didn't mean to interrupt. It sounds like your argument is that these protests were her response to this government action, and the persecution she suffered was directly related to her efforts in the protests. Is that right? That is correct, yes. I have a little bit of a different question, and that goes to the other prong, which is whether this rises to the level of persecution. And so I'm wondering what you think is the case that is most comparable to the harm that your client suffered that establishes persecution. Well, I believe there's generally the case of Gu and Gao. And the distinction that was made between them was that, in one of them, the harm didn't rise to the level of persecution. And the other one, what was the distinguishing factor was that the person had actually been terminated from their public employment. And that is the case here. I mean, if it was not political opinion, if it was just ‑‑ So now I'm not talking about nexus. Now I'm talking about whether the harm she suffered was severe enough to constitute persecution. And I think the cases may be Gu and, I don't know, if it's Guo, G-U-O. Those two cases are the two that you're calling attention to that I think were discussed in the briefing. And which one is it that you think that your most client is most comparable to? The former, because I believe the distinguishing factor there was that there was termination from public employment. And that's the case here. There was a 20‑year employment with the government, and it just goes to the totality of the circumstances that not only was she arrested and punished and put under surveillance and fined, but she lost her nearly 20‑year employment. And then on top of that also, their family was forced to be evicted, yes, but they never received the housing that they were promised. And to this day they live at the petitioner's brother's home. You have about three minutes left. Do you want to reserve some time? Yes. Thank you. We'll hear from the government. Do either of you have pens? Do either of you have pens? Thank you. Thank you. That's great. Thank you. Great. Thank you very much. May it please the Court, Matthew George for the Attorney General. After considering the totality of harm that Ms. Liu experienced, the agency determined that it did not rise to the level of persecution. It is Ms. Liu's burden to show that she experienced persecution. Ms. Liu testified that she did not seek medical treatment after her first detention, and she provided no evidence of medical treatment after her second detention, either through her own testimony or through medical records, through affidavits from family members, or other persons who would have knowledge on the subject. But she was not deemed incredible, true? Yes, Your Honor. That's correct. So we have her testimony. That's all we have, Your Honor. And it's deemed credible. Why isn't that enough? She did not testify about severity of injuries or any medical treatment that she suffered or sought after her second detention, and she said she did not seek any medical treatment after her first detention. Is that a requirement? Yes, it is. It's her burden. Well, I understand it's her burden, but as my colleague has pointed out, she was not found incredible. She testified that she was placed in jail, kicked and punched repeatedly by inmates in various places in her body, her arms, back, and thighs at the invitation of Chinese police. Although the police themselves didn't attack, they encouraged the inmates to play with her, in quotes. And during four days, she was beaten seriously, she said. She had to give people massages. If you didn't do it right, they beat her up. Now, that may not sound much to you. You may find that something would be titillating. I don't know. But the reality is it sounds to me like she was beaten fairly severely, if there's nothing to contradict that. So isn't the main issue that you are claiming that, in fact, this is not a protected category, it's personal as opposed to a political protected category? Or are you conceding that? We'd ask the court if it finds that this does rise to the level of persecution, that it send the case back to the board for further evaluation in light of who. Well, but, I mean, what's to evaluate? If she is not found incredible and she says that she organized, on two different occasions, a number of people who were protesting the fact that their property was, as we would call it, condemned, and she was receiving inadequate compensation, it was broken up by police, and when she was released, she was told that she should not be involved in this anymore. Let me see if I can find the exact quote. I will find it. But in any event, she was told, don't do this anymore. Why is that activity, organizing a protest against Chinese government policy for taking people's property for state purposes, not adequately compensating them, not giving them notice, why is that not a political act or political protest? Well, in this case, the board determined that it was not because it was primarily economic, because it was about compensation and it was about time to give up. Well, if it were her alone, that might be one thing. But there were a lot of people involved. I forget the estimate, but there were, I think it was in excess of 100, maybe 200 in the second protest. That's not just her. There's a lot of people involved. So, I mean, we have that kind of thing here where people object to somebody taking down a house that's been there for years, a historic structure. And that's political. We consider it political. Why is this just her? Sort of to use that example, Your Honor, if there's protests, say, out in front of the courthouse, people protesting maybe one of the court's decisions, if they're blocking the sidewalk and, say, the police come along and say, please move, that's not on account of their political opinion or whatever they're protesting. That's just a neutral ordinance or something that the police aren't enforcing. And that's what really the facts show that happened here. I mean, that's one. The difference here is, of course, the police aren't the ones that are taking the property. In this case, the police and the Chinese government are one and the same, and they're the ones that are taking the property, are they not? I don't know exactly how. At least that's the allegation. That's possible. And that's something the board needs to consider, certainly in light of this court's opinion in who. And in the unpublished cases that I cited in my 28-J letter, the court has done just that. Even in cases where the board has, like this case, determined that it was not a political opinion, it's sent it back for further evaluation or for a reconsideration. And that's what we'd ask. Here, I found this. At AR-116, she was told after initial detention that she, in quotes, could not disturb the social order and endanger the social peace or social security. And she was also told, I'm looking for a specific quote here, that she should not engage in any more of these protests as a condition of her release. So your view is that there's not enough in the record to permit us to make a determination that this, in fact, was a protected category of activity in which she was engaged. Well, the board should be the body in the first instance to make that decision. But the board already has. Well, it didn't have the benefit of this court's opinion in who, which, as the court has done in other cases, has sent it back for evaluation in light of that. And that's, if we're going to just assume that the persecution issue rises to a level, which it does not in this case, then the court should send it back. We're not assuming that. But I failed to see any difference between this case and many other cases  I mean, we've never required medical treatment necessarily before finding past persecution. It's certainly not an absolute requirement. However, there's no evidence here. It's an absence of evidence. Except she's found credible. Yes. Forgive me for interrupting. But it's similar to saying if the alien just said, I was persecuted, would that be sufficient to say, well, the alien was? Well, that's not what she said. What she said is that she was slapped on the first occasion. And the second occasion that the police with batons and shields beat her. She was taken to prison. And she was punched and kicked and beaten on the arms, back, legs, and thighs for four days, held for a total of eight days. And the difficulty is we're obligated to look at this record and to recognize that this testimony was found to be credible. Yes. Well, even considering what she did testify to, putting that sort of in the spectrum at least of published cases in this circuit, it's sort of in between things where the court has found persecution versus not persecution. Thank you. And so that gets me to the question that I asked of your opposing counsel, which is which is the case law you think we should look to that is most comparable to this fact pattern that you think supports your position? This case is most similar to GU, G-U, where the court said it wasn't enough. It was not enough. Okay. At best, I just personally would place it somewhere between GU and now I'm going to ‑‑ Guo. Guo. Thank you. I'd say it's somewhere in between that, and given that Congress has said that the Attorney General and the board and immigration judges get to decide where that line is exactly, the board in this case has decided it's on the GU side of that line rather than the Guo. Okay. So now I understand your position on that, and that's helpful to me. Could you take another minute to explain to me what is your best argument that this doesn't constitute, that these facts don't show sufficient nexus to her political opinion? Well, this is essentially a one‑off incident about compensation and about time to move out. And this is not saying that the government does not have the authority to do what it did. It was about money. It was about time, which in a sense ‑‑ Why does that matter? They're protesting a decision that the government has announced that it's going to do, whether it's ‑‑ why does it matter that it was going to hit them in the pocketbook or require these people to relocate or anything else? They were picketing, basically demonstrating in front of a government building. So I don't understand this point you're making about economics. Well, in a sort of a traditional political opinion sense, if you look at things that the board and I haven't really researched into what this court has explicitly said on the issue, there's a much broader record of things that a person is doing. He's writing letters. He's doing, like, op‑ed pieces. He's making much more public his political opinion such that people can infer that, if not explicitly. Well, she's pretty public. She was organizing the first protest was 110 people in front of the government office building, and the second protest was 300 people. And I'm also persuaded by, and I want to give you a chance to respond to the point Judge Smith made, which is when they let her go, they warned her to stay in her residential area, not attend political activities, and report to the police weekly. So it's not as though they said don't block the sidewalk, you know, to use your other analogy, but they really seem to be focusing on their perception of her activities as political in nature. What is your response to that? What should I make of that? I'm not sure why they included that particular language. It may just be something that's always included in these matters. However, certainly in the first incident they said it was disturbing the social order, which is really no different than, say, blocking the sidewalk. And if you look at both incidents. I think it has quite a different meaning in China than it does here. Perhaps it does. I don't know if we can glean that from the records. You know, what the petitioners testified to and what's in the record is that it was disturbing the social order. They showed up en masse to this office. They were asked to leave. They didn't leave. They came back with a bigger group demanding to see this person. They were, again, asked to leave. They didn't leave. And they were arrested for that. It's really no different than, say, blocking the sidewalk here and, say, the marshals come out and say, please leave, and they don't leave. The natural result of that is you're probably going to get arrested. But, you know, we have case after case after case, particularly from India, where this very situation occurs where there's a political protest and the police crack down and the person goes back and engages in more political protests and is arrested and beaten. And we say, that's a protest. That's a political opinion. I don't have those cases in front of me, Your Honor, but I imagine in a lot of those cases there are already members of political parties and things where it's much more explicit that they were participating in a very explicit political protest. Right. This goes to your point that blocking the sidewalk, gathering en masse, doesn't constitute an expression of political opinion just because the police have to disperse it. I'm certainly not saying it couldn't. And I think you're only reading through it, you're saying that economic protests don't count as political opinions. But we have all these union cases, which are clearly political opinions, where we've said that joining a union or the government cracking down on a union constitutes an appropriate nexus in a case. And I'm not saying those aren't either. I'm saying this one is. All right. Our questions have taken you over your time. Any further questions? No, thank you. Rebuttal? Just briefly, Your Honor. I believe that the quote that Your Honor was looking for is on AR-128, as far as not attending political activities. We might want to just note specifically what it says, is that she could, in quotes, not attend any political activities, in quotes. Correct. That's the one, right? That's correct, Your Honor. Just to reiterate, the case of Hu V. Holder did indicate that advancing economic interests of a personal nature could still be the basis of a political opinion. So I don't believe that counsel's argument can hold up the fact that it was a personal claim that they were making. It doesn't make it not political. So we would ask that the court would either grant asylum or remand it back to the board for a determination. Thank you very much for your time. Thank you, counsel. Thank you both for your arguments this morning. The case has now been submitted for decision.
judges: Thomas, Smith, Christen